*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *JUSTIN BERNIER,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Docket No. 04-280-P-C* |
| | ) | |
| *UNICCO SERVICE COMPANY,* | ) | |
| | ) | |
| *Defendant* | ) | |

*RECOMMENDED DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

The defendant, UNICCO Service Company, seeks summary judgment on both claims asserted against it in this action that was removed from the Maine Superior Court (Cumberland County). I recommend that the motion be granted in part.

**I.  Summary Judgment Standards**

**A.  Federal Rule of Civil Procedure 56**

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving

1

party.'"  *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor.  *Santoni,* 369 F.3d at 598.  Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue."  *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."  *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### B.  Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District.  *See* Loc. R. 56.  The moving party must first file a statement of material facts that it claims are not in dispute.  *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation.  *See id*.  The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation.  *See*

*id*.  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id*.  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(e).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id*.; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.") (citations and internal punctuation omitted).

## II.  Factual Background

The statements of material facts submitted by the parties pursuant to this court's Local Rule 56 include the following undisputed material facts.

The defendant provides cleaning services to several facilities in Maine, including Fairchild Semiconductor where about 20 of the defendant's employees clean the office and fabrication areas. Defendant's Statement of Material Facts ("Defendant's SMF") (Docket No. 35) ¶ 1; Plaintiff's

Response to Defendant's Statement of Material Facts, etc. ("Plaintiff's Responsive SMF") (Docket No. 56) ¶ 1.  Fairchild Semiconductor's fabrication area, referred to as "the Fab Room," is a "clean room," which means that the number of particles in the air must be kept at a very low level.  *Id*. ¶ 2.  For this reason, persons working in the Fab Room must wear special gowns that cover them from head to toe.  *Id*.

Frank Azzaratta was the defendant's account manager responsible for overseeing the employees and services provided to Fairchild Semiconductor.  *Id*. ¶ 3.  The defendant employed the plaintiff as a cleaner in the Fab Room from January 20, 2003 to February 17, 2004.  *Id*. ¶ 4.  Azzaratta interviewed and hired the plaintiff and his brother, Brookes Bernier ("Brookes"), to work in the Fab Room.  *Id*. ¶ 5.  He agreed to pay them $11.00 per hour, which was more than the defendant usually paid for the position.  *Id*. ¶ 6.  During the initial interview, Azzaratta described the requirements of the position, including the need to wear gowns, and also told the plaintiff and Brookes that they needed to assist in removing snow from the exterior of Fairchild Semiconductor's facility.  *Id*. ¶ 7.  The plaintiff believes that he stated during this interview that he had a pre-existing back condition and that he had had surgery on his back.  *Id*. ¶ 8.  During the interview, after learning of the physical requirements of the job as explained by Azzaratta, the plaintiff informed Azzaratta that he could perform the job and did not request any form of accommodation.  *Id*. ¶ 9.[1]  At the time the plaintiff was hired, three of the defendant's employees were assigned to the Fab Room, with the assistance of a working supervisor.  *Id*. ¶ 11.  Each worker was assigned a specific area of the Fab Room and was responsible for all cleaning duties in that area.  *Id*.  At the time the plaintiff was hired, Serita King was the working

---

[1] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 9, but the denial is not responsive to the facts alleged in the paragraph.  The paragraph is accordingly deemed admitted, to the extent that it is supported by the citation given to the summary judgment record.

supervisor assigned to the Fab Room. *Id*. ¶ 12.[2]  At one point Azzaratta was told by King that she had concerns about the plaintiff's attitude and work performance, but the concerns did not rise to the level of issuing a documented warning. *Id*. ¶ 13.[3]  The plaintiff's request for leave for back surgery in July 2003 was granted. *Id*. ¶ 14.  Before the surgery, the plaintiff believes that he told Azzaratta that he had lifting and bending restrictions. *Id*. ¶ 15.

The plaintiff returned to work a few weeks after the July 2003 surgery. *Id*. ¶ 17.  Before starting work, the plaintiff met with Azzaratta and gave him a "Return to Work Certificate" from Dr. Joel Ira Franck, who had performed the plaintiff's back surgery. *Id*. ¶¶ 14 & 17; Declaration of Dr. Joel Ira Franck (Docket No. 53) at 1.  The certificate, which was dated August 6, 2003, stated that the plaintiff could return to work on August 7, 2003 and identified restrictions including "part time" and "light duty."  Defendant's SMF ¶ 17; Plaintiff's Responsive SMF ¶ 17.  Additional restrictions included no lifting over 25-30 pounds, no bending at the waist, no sitting for more than 20-30 minutes without being able to get up and move around, no climbing or crawling, no ladders and no scaffolds. *Id*.  The plaintiff was allowed to work a part-time schedule. *Id*. ¶ 19.  In early September 2003 King decided not to return to work from maternity leave. *Id*. ¶ 20.[4]  The plaintiff and his brother approached Azzaratta and suggested that they split the work in the Fab Room between themselves so that they no longer would have to train new employees. *Id*.  By this time, the plaintiff had informed Azzaratta that he could return to work full time. *Id*.

---

[2] The plaintiff purports to deny all of paragraph 12 of the defendant's statement of material facts, but the denial does not address this portion of the defendant's statement, which accordingly is deemed admitted to the extent supported by the citation given to the summary judgment record.

[3] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 13, but the only material in the summary judgment record cited by the plaintiff as authority for the denial, his own affidavit, does not address the substance of the defendant's statement. Declaration of Justin Bernier ("Plaintiff's Aff.") (Docket No. 54 ) ¶ 1 ("Serita King and I have never had a heated disagreement.  At no time did I act inappropriately toward her.").

[4] Once again, the plaintiff purports to deny this entire paragraph of the defendant's statement of material facts but in fact denies only portions of the paragraph.  Plaintiff's Responsive SMF ¶ 20.  I recite only those facts from this paragraph with which the plaintiff clearly agrees.

In December 2003 Fairchild Semiconductor informed the defendant that it was considering reducing the area of the Fab Room by transforming some of it into office space.  *Id*. ¶ 22.  When the transformation was complete, the amount of cleaning work in the Fab Room would decrease.  *Id*.

During the winter of 2003-04 the plaintiff supervised a snow removal crew and used a snow blower at Fairchild Semiconductor.  *Id*. ¶ 23.  After the July 2003 surgery the plaintiff and his brother agreed that Brookes would perform tasks in the Fab Room that the plaintiff was unable to perform.  *Id*. ¶ 24.  In early January 2004 Azzaratta learned that one of the defendant's second-shift supervisors had responded to a water leak in the Fab Room; this supervisor, Angie Bernier, notified Azzaratta that she did not feel the Fab Room was cleaned in compliance with Fairchild Semiconductor's requirements. *Id*. ¶ 26.  Another supervisor, Heather Lavigne, informed Azzaratta that she felt the Fab Room was not being cleaned up to the specifications; this may have occurred after construction began in the Fab Room.  *Id*. ¶ 27.  At least twice, Azzaratta needed to have additional personnel assist the plaintiff and his brother to properly clean the Fab Room.  *Id*. ¶ 28.[5]  Eventually Azzaratta decided that he need to hire a third employee to work in the Fab Room.  *Id*. ¶ 29.  The first employee, who was hired in January 2004,[6] only worked for a few days.  *Id*. ¶ 30.  Azzaratta then hired Jon Kleiser, who had been recommended by the plaintiff for the position.  *Id*. ¶ 31.

At some point, Fairchild Semiconductor told the defendant that it needed to reduce the number of staff in the Fab Room.  *Id*. ¶ 32.[7]  Azzaratta reported this to the plaintiff and Kleiser.  *Id*. ¶ 33.[8] Annual evaluations of the plaintiff and Brookes would normally have occurred in the first two or three

---

[5] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 28, but the denial is not responsive to the factual assertions in that paragraph.

[6] The original reads "2005," Defendant's SMF ¶ 30, but that is obviously a typographical error.

[7] The plaintiff denies only a portion of this paragraph of the defendant's statement of material facts.  Plaintiff's Responsive SMF ¶ 32. He did not respond to the portion stated here, which accordingly is deemed admitted to the extent supported by the citation given to the summary judgment record.

[8] The plaintiff denies only a portion of this paragraph of the defendant's statement of material facts.  Plaintiff's Responsive SMF ¶ 33. He does not respond to the portion stated here, which accordingly is deemed admitted to the extent supported by the citation given to (*continued on next page*)

months of the year.  *Id*. ¶ 34.[9]  Cindy Bernier prepared these evaluations.  *Id*.  The plaintiff received a total score of 2.34 on his evaluation.  *Id*. ¶ 35.  Brookes received a score of 2.83.  *Id*.  The score is an average of ratings from 1 (unsatisfactory) to 5 (excellent) in each of six categories.  *Id*.  Both brothers received scores of 1 on appearance and 4 on attendance/punctuality.  *Id*. ¶¶ 36-37.  The plaintiff was rated 3 on performance and his brother was rated 4 in this category.  *Id*. ¶ 38.  Both were rated 2 in the category of safety.  *Id*. ¶ 39.  In the category of attitude and teamwork the plaintiff was rated 2 and Brookes was rated 3.  *Id*. ¶ 41.  Cindy Bernier told Azzaratta that she recommended that the plaintiff be removed from the Fab Room.  *Id*. ¶ 47.[10]

During the week of February 8, 2004 Brookes told Cindy Bernier that he did not feel the work in the gowning room, which was normally done at the end of the day, was fairly distributed among the three employees in the Fab Room.  *Id*. ¶¶ 51-52.  Cindy Bernier prepared a new job assignment chart for the gowning room.  *Id*. ¶ 53.  She met with the plaintiff on February 10, 2004 to discuss changes in these work assignments.  *Id*. ¶ 54.[11]  She then discussed the plaintiff's conduct at that meeting with Azzaratta.  *Id*. ¶ 55.  On February 11, 2004 the plaintiff called Dr. Franck's office to obtain a copy of the "Return to Work Certificate" that had been issued immediately after his surgery.  *Id*. ¶ 57.  A new Return to Work Certificate was sent from Dr. Franck's office on which "full time" and "back restrictions" were checked and the statement "patient must be able to stop frequently" was written. *Id*. ¶ 58.  On February 11, 2004 Cindy Bernier left the plaintiff a note requesting that he meet with her at

the summary judgment record.

[9] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 34, but the denial does not address those portions of the paragraph that are stated in the body of this recommended decision, which are accordingly deemed admitted to the extent supported by the summary judgment record.

[10] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 47, but his denial is based on a view of the appropriate weight to be given the evidence rather than any factual disagreement.  That is an inappropriate basis for a denial under Local Rule 56.  The factual assertion is deemed admitted because it is supported by the citation given to the summary judgment record.

[11] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 54, but the denial does not address those portions of the paragraph stated here, which are accordingly deemed admitted to the extent supported (*continued on next page*)

1:30 to discuss his evaluation and his conduct at the previous day's meeting.  *Id*. ¶ 59.  When he arrived at 11:30 a.m. the plaintiff handed Cindy Bernier the new Return to work Certificate and told her that he was not feeling well and wanted to go home.  *Id*.  Cindy Bernier asked the plaintiff how the work restrictions set forth in the Return to Work Certificate applied to the gowning room schedule. *Id*. ¶ 60.  She asked the plaintiff to return to his doctor to get clarification about the specific restrictions as they applied to the gowning schedule.  *Id*.

Cindy Bernier then went over the plaintiff's evaluation with him.  *Id*. ¶ 61.  He did not have any questions.  *Id*.  Azzaratta was in the room at the time and asked the plaintiff about the restrictions on the Return to Work Certificate.  *Id*. ¶ 62.  The plaintiff gave Azzaratta and Cindy Bernier Dr. Franck's office telephone number and told them that they could discuss the restrictions directly with Dr. Franck.  Additional Statements of Material Fact ("Plaintiff's SMF") (included in Plaintiff's Responsive SMF, beginning at 42) ¶ 115; Defendant UNICCO Service Company's Response to Plaintiff's Additional Statement of Facts ("Defendant's Responsive SMF") (Docket No. 66) ¶ 115. The plaintiff may have raised his voice during this meeting.  Plaintiff's Responsive SMF ¶ 62.  He left the building shortly after the meeting.  Defendant's SMF ¶ 62; Plaintiff's Responsive SMF ¶ 62. After the meeting, Azzaratta became concerned that the certificate was not valid and called Dr. Franck's officer to verify it.  *Id*. ¶ 63.  The person with whom he spoke confirmed that it had been signed by someone in Dr. Franck's office.  *Id*.  Azzaratta also prepared a Disciplinary Notice stating that "Employee left early.  Claimed he wasn't feeling well.  This is after he becomes belligerent and disrespectful towards his supervisor.  Presents Dr's note that he claims allows him to come and go as he pleases."  *Id*. ¶ 66.

by the administrative record.

8

The plaintiff asked his brother to tell his supervisors that he would not be coming in to work on February 12, 2004. *Id*. ¶ 68.[12] His brother did not do so. *Id*. When the plaintiff did not show up for work that day, Azzaratta prepared a Disciplinary Notice for the plaintiff stating "Employee failed to call or notify of absence. Had left early on 11 Feb 04." *Id*. ¶ 69. On February 13 the plaintiff did not show up to work as scheduled and did not call. *Id*. ¶ 70.[13] Azzaratta called the plaintiff's home several times on February 13 and called his cell phone once. *Id*. ¶ 71. He left a message at the home number telling the plaintiff that he should not report to work and that he should meet with Azzaratta at the defendant's office in South Portland on Tuesday, February 17. *Id*. At the time, Azzaratta had decided that the plaintiff would be the employee laid off from the Fab Room but wanted to meet with the plaintiff to see if he wanted a different job in the office area. *Id*.

At about 5:30 p.m. on February 13, Kleiser brought a note to the Fairchild Semiconductor office which indicated that the plaintiff would be out of work until February 19. *Id*. ¶ 72. Another manager called Azzaratta to tell him about the doctor's note. *Id*. The plaintiff did not attend the meeting on February 17. *Id*. ¶ 74. Azzaratta then decided to lay the plaintiff off rather than offering him the other position. *Id*. ¶ 75.[14] He prepared a letter to the plaintiff stating that the plaintiff had been laid off. *Id*. ¶ 76.[15] The letter states that the plaintiff is being terminated because of "cutbacks in

---

[12] The date is not specified in paragraph 68 of the defendant's statement of material facts, but it is apparent when paragraphs 67-69 are read together. The plaintiff's denial of paragraph 67 does not address the date to which paragraph 68 refers. Therefore, because the summary judgment evidence cited in support of paragraphs 67-69 by the defendant establishes that this is in fact the relevant date, it is deemed admitted.

[13] The plaintiff purports to deny paragraph 70 of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 70, but the denial does not address the portion of that paragraph stated here, which is accordingly deemed admitted to the extent supported by the evidence cited in the summary judgment record.

[14] The plaintiff purports to deny this portion of paragraph 75 of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 75 ("Plaintiff denies the suggestion that Azzarat[t]a's decision to terminate Justin's employment was due to him not having contacted Azzarat[t]a or not having attended the meeting for the reasons stated in paragraphs 46 and 64."), but neither of those responses addresses the factual assertion set forth above and accordingly it is deemed admitted because it is supported by the citation given to the summary judgment record.

[15] The plaintiff spends considerable time and effort in his response to this paragraph of the defendant's statement of material facts arguing that he was in fact terminated rather than laid off. Plaintiff's Responsive SMF ¶ 76. This argument does not change the fact that the letter used this terminology. The argument would be more appropriate in a memorandum of law.

personnel." Plaintiff's SMF ¶ 104; Defendant's Responsive SMF ¶ 104. The plaintiff does not

remember attempting to contact his supervisors after he received this letter. Defendant's SMF ¶ 77;

Plaintiff's Responsive SMF ¶ 77. When he laid the plaintiff off, Azzaratta thought that the plaintiff

was physically able to do the job properly and was "more unwilling to complete the duties than unable

to complete the duties." *Id*. ¶ 78.[16]

The defendant did not hire another employee to fill the plaintiff's position. *Id*. ¶ 92.

An MRI in March 2004 revealed nerve root impingement that causes the plaintiff chronic back

pain. Plaintiff's SMF ¶ 97; Defendant's Responsive SMF ¶ 97.

### III. Discussion

The plaintiff asserts two claims against the defendant: violation of the Maine Human Rights

Act, 5 M.R.S.A. § 4572; and violation of the federal Family Medical Leave Act, 29 U.S.C. § 2615.

Second Amended Complaint (Docket No. 17) at 2-3.

### A.  Maine Human Rights Act

The defendant first contends that it is entitled to summary judgment on Count One of the Second

Amended Complaint because the plaintiff cannot establish that he had a physical disability as that term

is defined in the Maine Human Rights Act ("MHRA") and regulations implementing it. Defendant's

Motion for Summary Judgment, etc. ("Motion") (Docket No. 33) at 1, 6-15. The MHRA provides, in

relevant part:

---

[16] In his response to this paragraph of the defendant's statement of material facts, the plaintiff "denies any suggestion that Azzaratta's belief about Justin's work ethic was unrelated to his back problems and limitations," a denial that is presented as a qualification. Plaintiff's Responsive SMF ¶ 78. Of the two sources cited in support of this denial, paragraph 8 of the affidavit of Brookes Bernier does not support it; nor does paragraph 4 of the affidavit of Peter Grass. Affidavit of Brookes Bernier (Docket No. 59) ¶ 8; Affidavit of Peter Grass ("Grass Aff.") (Docket No. 58) ¶ 4. Paragraph 5 of the Grass Affidavit, while not contradicting the factual assertion set forth above, could reasonably be read to cast some doubt on it ("Mr. Azzaratta told me that he selected Mr. Bernier for termination because Mr. Bernier's back condition made him less valuable than the other employees in the fab . . . . "). Grass Aff. ¶ 5.

10

    **1. Unlawful employment.** It is unlawful employment discrimination, in violation of this Act, except when based on a bona fide occupational qualification:

        **A.** For any employer to fail or refuse to hire or otherwise discriminate against any applicant for employment because of race or color, sex, sexual orientation, physical or mental disability, religion, age, ancestry or national origin, because of the applicant's previous assertion of a claim or right under former Title 39 or Title 39-A or because of previous actions taken by the applicant that are protected under Title 26, chapter 7, subchapter 5-B, or, because of those reasons, to discharge an employee or discriminate with respect to hire, tenure, promotion, transfer, compensation, terms, conditions or privileges of employment or any other matter directly or indirectly related to employment . . . .

5 M.R.S.A. § 4572(1).

    The plaintiff took the position in response that the MHRA does not require a plaintiff to show that the disability at issue created a substantial limitation on a major life activity, the definition adopted by the Maine Human Rights Commission in its regulations construing the MHRA. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opposition") (Docket No. 42) at 5-10. The parties informed this court that this issue was pending before the Maine Law Court and suggested that this court "may want to wait until the Law Court issues its ruling." *Id*. at 5 n.3; Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Reply") (Docket No. 65) at 1-2. I acceded to this request. The Law Court has now issued its ruling on the issue, holding that the MHRA does not require a showing of a substantial limitation on a major life activity in order to demonstrate the existence of a physical disability and invalidating the regulation that incorporated such a definition. *Whitney v. Wal-Mart Stores, Inc.*, 2006 ME 37, __ A.2d __ (2006), at [¶1]. I will therefore not address the defendant's argument based on the regulatory definition.

    The defendant does not argue that the evidence cannot establish that the plaintiff had a physical disability at the relevant time independent of the now-discredited regulatory definition. The plaintiff

asserts that he is disabled under the correct interpretation of the MHRA because his back condition is a "malformation" and Dr. Franck believes that the back condition is a "substantial disability." Opposition at 10-11. This position appears to be correct under *Rozanski v. A-P-A Transport, Inc.*, 512 A.2d 335, 340 (Me. 1986), in which the Law Court held that an asymptomatic malformation of the spine is a "physical handicap[] that entitle[s] [the plaintiff] to the protection of the Maine Human Rights Act." Given these circumstances, it is not necessary to address the defendant's contention that it did not regard the plaintiff as being disabled. Motion at 16.

The defendant next contends, *id*. at 16-18, that it has offered legitimate, non-discriminatory reasons for the plan to transfer the plaintiff out of the Fab Room and for the plaintiff's termination and that the plaintiff cannot demonstrate that these reasons were pretextual and that the discharge resulted from a forbidden discriminatory animus, as required by the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ricci v. Applebee's Ne., Inc.*, 297 F.Supp.2d 311, 317 (D. Me. 2003). The plaintiff asserts, Opposition at 19-24, that he has presented sufficient evidence both of pretext and of the alternative "mixed motive" approach allowed in such cases, *Ricci*, 297 F.Supp.2d at 317-18. The plaintiff appears to contend first that Azzaratta made remarks that, standing alone, establish the necessary discriminatory animus. Opposition at 20-21. Specifically, he refers to "statements indicating that [Azzaratta] considered Justin's back problem to be a liability to the company and that he felt that his back problem made him a less valuable employee" and that "he terminated Justin because of his back condition." *Id*.

The paragraphs of his statement of material facts on which the plaintiff relies[17] are qualified or denied by the defendant, Defendant's Responsive SMF ¶¶ 112-22,[18] but with the exception of

---

[17] The plaintiff also cites his response to paragraph 46 of the defendant's statement of material facts, Opposition at 20, but that response cannot reasonably be interpreted to support the interpretation proffered by the plaintiff in support of his position.

[18] The practice of incorporating by reference a party's responses to other paragraphs of an opposing party's statement of material (*continued on next page*)

Azzaratta's alleged statement to Grass that he terminated the plaintiff because his "back condition made him less valuable than the other employees in the fab," Plaintiff's SMF ¶ 122, the cited paragraphs would not suffice, standing alone, to demonstrate the necessary elements either of pretext or of the existence of a discriminatory animus. The proffered evidence is enough, in any event, to prevent the entry of summary judgment in favor of the defendant on the basis of its contention that the plaintiff was terminated only for reasons relating to his work performance.  The plaintiff's interpretation of these facts is certainly not the only possible interpretation, but he is not seeking summary judgment.  The test therefore is only whether a reasonable juror could find, based on the proffered evidence, either that the defendant's asserted non-discriminatory reason for the termination was a pretext and that its actual reason was based on prohibited discrimination due to a disability or that one of the reasons for the termination was such discrimination.  The defendant is not entitled to summary judgment on Count One.

## B.  Family Medical Leave Act

The defendant contends that it is entitled to summary judgment on Count Two of the amended complaint, which alleges violation of the federal Family Medical Leave Act, because the plaintiff "does not have any evidence to show that Mr. Azzaratta's decision to lay him off was in any way related to his medical leave," and because the plaintiff's "rights under the FMLA were extinguished when he was laid off during his leave."  Motion at 18-20.  The plaintiff responds that the deposition testimony on which the defendant relies in support of its first contention was subsequently modified by the plaintiff and that there is "ample evidence that Mr. Azzaratta terminated Justin because he took medical leave."  Opposition at 27-28.  He does not respond to the defendant's second argument.

---

facts, frequently employed by counsel for the plaintiff even to the extent of incorporating by reference other incorporations by reference, *e.g.*, Plaintiff's Responsive SMF ¶¶ 47, 64, 71, 75-76, 78-79, 86-87; Plaintiff's SMF ¶¶ 112, 116, creates unnecessary additional work for the court and should be avoided.

The applicable statute provides, in pertinent part: "[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: . . . **(D)** Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" this right.  29 U.S.C. § 2615(a)(1).

The only factual assertion relevant to the defendant's first argument offered by the defendant in a statement of material facts is that "Plaintiff[] has no reason to believe he was laid off because he requested medical leave."  Defendant's SMF ¶ 86.  The plaintiff has controverted this paragraph. Plaintiff's Responsive SMF ¶ 86.  The defendant argues that the plaintiff may not "avoid the obvious impact of [the] critical admission" in his deposition testimony which is cited by the defendant as the evidentiary support for paragraph 86 of its statement of material facts, Reply at 10, but the plaintiff has cited evidence other than his apparently extensive errata sheets submitted some time after his deposition, *see* Defendant's Responsive SMF ¶ 109, specifically his response to paragraph 46 of the defendant's statement of material facts and paragraphs 102-07 and 112-22 of his own statement of material facts, Opposition at 27.  However, contrary to the plaintiff's assertion that "[t]here is ample evidence that Mr. Azzaratta terminated Justin because he took medical leave," *id.*, most of the cited paragraphs may only reasonably be construed to relate to the plaintiff's discrimination claim rather than his claim based on medical leave.  Giving the plaintiff's factual assertions in paragraphs 119-20 of his statement of material facts the benefit of all reasonable inferences as required by the case law governing motions for summary judgment, and combining that evidence with his denial of the only evidence on which the defendant chose to rely in its initial motion, the plaintiff survives the motion for summary judgment on this basis, although barely.

14

This is the case even when the defendant's contention that the "[p]laintiff's temporal proximity argument fails given that UNICCO was aware of Plaintiff's back condition since July 2003, when Plaintiff took time off for surgery," Reply at 11, is considered.  It is not the temporal proximity between the defendant's knowledge of the plaintiff's medical condition or disability that is at issue with respect to the Family Medical Leave Act.  Rather, it is the temporal proximity between the request for or taking of such leave and the adverse employment action, in this case the plaintiff's termination.  *See, e.g., Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 110 (1st Cir. 1988).  In this case, the gap was no more than seven days, close enough to be considered as evidence of a causal connection although not necessarily sufficient evidence standing alone.

The defendant's other argument, Motion at 19-20,  which the court must consider despite the plaintiff's failure to respond to it, *Lopez v. Corporación Azucarera de Puerto Rico*, 938 F.2d 1510, 1517 (1st Cir. 1991), relies on 29 C.F.R. § 825.216(a)(1), which provides:

> (a) An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period.  An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.  For example:

> (1) If an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave, maintain group health plan benefits and restore the employee cease at the time the employee is laid off, provided the employer has no continuing obligations under a collective bargaining agreement or otherwise.  An employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration.

29 C.F.R. § 825.216(a)(1).  The defendant's entire argument on this point is the following: "As set forth above, Mr. Azzaratta's decision to lay Plaintiff off was based on Plaintiff's failure to show up for the meeting or to contact Mr. Azzaratta.  The decision did not have any connection to Plaintiff's

request for medical leave."  Motion at 20.  As I have already discussed, this is not the only possible interpretation of the evidence in the summary judgment record.  Particularly here, where the burden of proof is on the defendant, a mere assertion of the defendant's position, unaccompanied by a demonstration that it is also the only possible reasonable conclusion from the evidence in the summary judgment record, is insufficient to entitle it to summary judgment.

The defendant is not entitled to summary judgment on Count Two on the showing made.

## C.  Damages

The defendant seeks summary judgment on the plaintiff's claims for reinstatement or front pay and for punitive damages.  Motion at 20-21.  The plaintiff agrees that he is no longer seeking reinstatement or front pay, Opposition at 28, and the entry of summary judgment on these claims is appropriate, *see* Defendant's SMF ¶ 94; Plaintiff's Responsive SMF ¶ 94.

With respect to the claim for punitive damages, which is asserted only in connection with Count One, Second Amended Complaint at 2-3, the defendant somewhat confusingly, and certainly briefly, contends that the plaintiff cannot show that it acted "with malice or reckless indifference to the federally protected rights of an aggrieved individual," citing 42 U.S.C. § 1981a(b)(1), Motion at 20-21.  Count One asserts only a claim under state law.  The plaintiff responds that the same standard is applicable to claims for punitive damages under Maine and federal employment discrimination statutes and quotes the standard imposed by the MHRA at 5 M.R.S.A. § 4613(2)(B)(8)(c).  Opposition at 29.  The relevant portions of that statute provide:

> In cases of intentional employment discrimination, [damages may include] compensatory and punitive damages as provided in this subparagraph.
>
> * * *
>
> **(c)**  A complaining party may recover punitive damages under this subparagraph against a respondent if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or reckless indifference to the rights of an aggrieved individual protected by this Act.

16

5 M.R.S.A. § 4613(2)(B)(8)(c).

The plaintiff asserts that "[e]vidence that a defendant lied to cover up its wrongdoing will support a claim for punitive damages," contending that Azzaratta "has lied about what he said to Mr. Grass to cover up his wrongdoing." Opposition at 29. The only authority he cites for this statement is paragraph 103 of his statement of material facts, which states: "At his deposition, Mr. Azzaratta denied making the statement that Mr. Grass attributed to him in paragraph 5 of Mr. Grass' deposition [sic]." Plaintiff's SMF ¶ 103.[19] The sole authority cited by the plaintiff in support of this contention, Opposition at 29, is *Davis v. Rennie*, 264 F.3d 86, 115 (1st Cir. 2001). It is clear from a careful reading of that opinion that the "lying to cover up wrongdoing" involved in that case far exceeded in scope, and differed significantly in type from, the mere denial during deposition testimony that the deponent made a statement attributed to him by one other witness. In *Davis*, the defendants falsified required written reports of the incident in question, filed a groundless complaint against the plaintiff and testified that they did not see conduct which other witnesses testified occurred in their presence. *Id*. at 115-16. Azzaratta's deposition testimony does not begin to rise to the level of the evidence in *Davis.*

The plaintiff also asserts that Azzaratta, "a senior official with the Defendant and the corporate representative in this action" "knew that terminating Justin because of his disability would violate his rights." Opposition at 29. He cites no authority in support of the two critical assertions in this argument: that Azzaratta was a "senior official with the Defendant," such that his conduct could bind the defendant for purposes of an award of punitive damages, and that Azzaratta knew that the conduct

---

[19] The plaintiff means to refer to paragraph 5 of Grass's affidavit, which states, in pertinent part: "Mr. Azzaratta told me that he selected Mr. Bernier for termination because Mr. Bernier's back condition made him less valuable than the other employees in the fab that had no pre-existing physical problems." Grass Aff. ¶ 5.

of which he is accused would violate the plaintiff's rights under the MHRA.[20]  The plaintiff does cite paragraph 110 of his statement of material facts in support of the assertion that "Defendant's own policies speak at length about disability discrimination laws and the protections they provide to employees," *id*., which repeats verbatim that paragraph of the statement of material facts, Plaintiff's SMF ¶ 110, but in the absence of any evidence that Azzaratta was familiar with these policies, that the policies discussed employee rights under the MHRA and, most importantly, that Azzaratta held a position with the defendant sufficient to allow his actions to be imputed to the defendant, *see* Restatement (Second) of Torts § 909 (2002), this assertion does nothing to advance the plaintiff's claim for punitive damages.   Nor does the plaintiff's suggestion that the defendant "tampered with evidence," citing paragraphs 106-07 of his statement of material facts, add anything to the body of evidence available to support a claim for punitive damages.  The plaintiff offers only wild speculation that such "tampering" may have occurred.

On the showing made, the defendant is entitled to summary judgment on the demand for punitive damages in Count One.

## IV.  Conclusion

For the foregoing reasons, I recommend that the defendant's motion for summary judgment be **GRANTED** as to any claims for reinstatement, front pay or punitive damages and otherwise **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for*

---

[20] The fact that Azzaratta has been a designated corporate representative for the defendant in this action — presumably at a deposition of the corporate defendant, although the plaintiff never identifies when or where — does not and cannot alone make his actions before this case was brought into actions for which the corporate defendant is vicariously liable.

18

*which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 19th day of April, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge